805 F.2d 394
 22 Fed. R. Evid. Serv. 63
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donald William WILEY and Kenneth Wiley, Appellants,
v.
VOLKSWAGEN OF AMERICA, INC., a New Jersey Corporation; and
Volkswagenwerk, A.G., a Corporation of the Federal
Republic of Germany Wolfsburg, West
Germany, Appellees.
 No. 86-3016.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 6, 1986.
Decided Nov. 14, 1986.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (C/A 82-846)
 Robert J. Weltchek (Bertram M. Goldstein; Goldstein, Weltchek & Associates, on brief), for appellants.
 Leonard L. Lipshultz (John Llewellyn Hone; Victor I. Weiner; Lipshultz and Hone, Chartered, on brief), for appellees.
 D.Md.
 AFFIRMED.
 Before WIDENER and PHILLIPS, Circuit Judges, and Richard L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiffs appeal the grant of a directed verdict in favor of defendant manufacturers Volkswagen of American and Volkswagenwerk, A.G., in this personal injury products liability action. Plaintiffs allege that the trial court improperly excluded the testimony of two of their expert witnesses and held them to an improper standard of proof on the question whether the vehicle was in substantially the same condition at the time of the accident as when it left the manufacturers. Because we conclude that the district court properly rejected the testimony of plaintiffs' tendered experts and that a directed verdict was properly granted on plaintiffs' failure to introduce any other evidence of a design defect, we affirm.
 
 
 2
 * Plaintiff Donald W. Wiley was seriously injured in an accident on a rural road in Hartford County, Maryland, on May 20, 1979. Although it is unclear precisely how this accident occurred, it is not controverted that plaintiff was a rear-seated passenger in a 1968 Volkswagen with a swing-arm rear suspension system and that he sustained paralyzing injuries during a roll-over sequence.
 
 
 3
 During the trial, plaintiffs attempted to prove that a defect in the Volkswagen's rear suspension system had caused the vehicle to roll over and that a defect in the design of the rear window retention system had contributed to plaintiff Wiley's injuries by popping out, thus permitting him to be ejected through the rear window opening. Plaintiffs sought to offer as expert opinion the testimony of Matthew DeMaria that the Volkswagen's rear suspension system was defective. Upon the conclusion of DeMaria's voir dire examination, however, the district court ruled that DeMaria was not qualified to testify as an expert in the design of swing-arm suspension systems, but ruled that DeMaria could testify as to how the suspension system was made. Plaintiffs, however, did not offer DeMaria's testimony on the workings of a suspension system to the jury and did not present any other direct evidence of a design defect in the Volkswagen's suspension system.
 
 
 4
 As evidence of the existence of a defect in the design of the Volkswagen's rear window retention system, plaintiffs offered the testimony of Frank Camps. The district court ruled that Camps was qualified as an expert in the field and allowed him to state his opinion that the Volkswagen's rear window retention system was defective.
 
 
 5
 After approximately six weeks of trial and at the close of plaintiffs' evidence, the district court granted defendants' motion for a directed verdict. The district court found that no evidence had been introduced to support a finding that there was a defect in the suspension system. The only expert offered by plaintiffs to offer a supporting opinion had failed to qualify and no other significant evidence on this issue had been offered. On the question of the existence of a design defect in the rear window retention system, the district court refused to let the jury consider Camps' testimony, finding that it did not rise above the level of speculation, surmise, and conjecture. Because Camps' testimony was the only evidence of a defect in the window retention system, the court found that there was no credible evidence from which a jury could infer the existence of such a defect. Thus the district court concluded that defendants were entitled to a directed verdict on the issue of a design defect in the rear suspension system and on the issue of a design defect in the rear window retention system.
 
 
 6
 In ruling on defendants' motion for a directed verdict, the district court also noted that plaintiffs had failed to establish another element necessary to recover in strict liability under Sec. 402(a) of the Restatement of Torts. Specifically, the court found that the evidence presented was insufficient to permit the inference that the vehicle was defective when it left the manufacturer's hands in October 1967 and in substantially the same condition at the time of the accident in May 1979. The court noted that it based this conclusion on the totality of evidence presented by plaintiffs. It took into account that the car had been driven 170,000 miles, that the car had been sold for only $100 thirteen years after its manufacture, and that plaintiffs had offered no evidence concerning the condition of the car from 1967 to 1971. This appeal followed the district court's ruling in favor of defendants.
 
 II
 
 7
 On appeal, plaintiffs contend that the trial court erred in refusing to permit DeMaria to give an expert opinion regarding the existence of a design defect in the rear suspension system and in refusing to accord weight to Camps' testimony as to the existence of a design defect in the Volkswagen's rear window retention system, and that the trial court placed undue emphasis on the existence of a four-year gap in the "chain of custody" established by plaintiffs in holding that plaintiffs' evidence that the vehicle was substantially unchanged was legally insufficient. The plaintiffs contend that these evidentiary errors led the trial court improperly to grant the directed verdict in favor of defendants. We disagree.
 
 
 8
 "The exclusion of evidence is squarely within the discretion of the trial judge ... and cannot be reversed absent abuse of that discretion." DeBenedetto v. Goodyear Tire and Rubber Co., 754 F.2d 512, 518 (4th Cir.1985). Discretion is particularly broad when ruling on the matter of the admission or exclusion of expert opinion evidence, and the trial judge's decision "is to be sustained unless manifestly erroneous." Salem v. United States Lines Co., 370 U.S. 31, 35 (1962). The first question is whether discretion was abused in refusing to allow DeMaria to testify as an expert.
 
 
 9
 The testimony before the district court demonstrated that DeMaria had the following qualifications: (1) he held a bachelor of science degree in electrical engineering; (2) he had taken at least three courses in mechanical engineering; (3) he regularly read periodicals and books in the field of automotive engineering; (4) he often made specific modifications to the rear suspension systems of Volkswagens during the course of his employment and as a hobbyist; (5) he often changed the inclination of the rear tires with relation to the center of the vehicle, relying on the observations of customers, friends, or other volunteers as he drove the vehicles through a series of pylons in a parking lot to determine whether the degree of camber or body roll of the vehicle had been changed during the course of making modifications on the vehicles; and (6) he had spent significant amounts of time repairing, refurbishing, and restoring Volkswagens for the past 15 years. Plaintiffs argue that this testimony was sufficient to qualify DeMaria as an expert in the design of the Volkswagen rear suspension system and that the trial court erroneously refused to qualify DeMaria because it misinterpreted Fed.R.Evid. 702.
 
 
 10
 We agree that the court's statement that an expert has to be qualified "by virtue of training, experience and knowledge," App. 446, was erroneous. The rule requires only that an expert be qualified by virtue of knowledge, skill, experience, training, or education. Garrett v. Desa Industries, 705 F.2d 721, 724 (4th Cir.1983). In some cases a witness may qualify as an expert on the basis of one of these factors alone. However, the test of expert qualification under Rule 702 is not a mechanical one, and the mere presence or lack of a particular factor is not determinative of whether a witness has demonstrated that he or she possesses qualifications sufficient to make his or her opinion useful to the jury in resolving factual disputes. We are satisfied that in this case the court's error--which may have been no more than an inadvertent misstatement of the rule--was in any event harmless.
 
 
 11
 The court based its judgment that DeMaria did not possess sufficient knowledge, skills, training, experience, or education to qualify him as an expert in the design of Volkswagen suspension systems on the following factors: (1) DeMaria had difficulty answering questions about tests he said that he had performed on Volkswagens; (2) the changes made on Volkswagens by DeMaria had been either to repair or to modify the vehicles, not to correct any defect in the vehicle; (3) DeMaria lacked sufficient knowledge of the principles of automotive engineering; (4) he had never worked in the field of mechanical engineering and was not licensed to practice even as an electrical engineer; (5) DeMaria had virtually no knowledge of leading authorities in the field of automotive engineering; (6) the testing DeMaria said that he had conducted was amateurish; and (7) DeMaria lacked candor when relating his qualifications to the court. In sum, the court found DeMaria to be a skilled automobile mechanic who specialized in the repair and modification of Volkswagens, but also found him not to be an expert in any aspect of automotive design.
 
 
 12
 Reviewing the testimony offered by DeMaria and the factors cited by the court in support of its determination that DeMaria was not qualified to testify as an expert on the design of rear suspension systems, we cannot conclude that the court's decision was an abuse of discretion.
 
 
 13
 Neither was there error in the district court's decision to accord no probative weight to Camps' testimony. We agree with the court's assessment that Camps' theory as to the existence of a design defect in the Volkswagen window retention system was speculative and unsupported by any compelling empirical data. Camps suggested that the rear window of the Volkswagen was defective because the rear header section of the window was too small, the pinch weld flange was too short, and the rubber grommet was too small. The small size of these parts permitted the header section to deflect sufficiently to cause a deflection in the pinch weld flange and thus permit the retaining lip of the grommet to come off the pinch weld flange, that is to unzip itself around the periphery of the rear window opening and thus allow the glass to pop out. Camps testified to this theory even though he had never tested the 1968 Volkswagen rear window retention system and was unable to identify the parts of the rear window retention systems of other cars. He had never tested the performance of the grommets on a 1968 Volkswagen even though he acknowledged that the only way to determine how a grommet would perform would be to test it.
 
 
 14
 Camps' theory as to the existence of a defect in the window retention system was based entirely on his review of on a sled roll-over test which had been performed by defendants. On cross-examination, Camps stated that the rear window of a Pinto would not come out if it were tested in the same manner as the Volkswagen window had been tested, because the Pinto's retention system was not defective. However, when shown a Pinto being subjected to the same sled roll-over test as the 1968 Volkswagen had been subjected to, he could not explain why the Pinto's rear windows had also separated during the test. Thus the court found it illogical for Camps to rely on a sled roll-over test to determine if the Volkswagen was defective when a test of a Pinto which he claimed not to be defective produced the exact same result. These findings on the part of the court were more than sufficient to justify its conclusion that Camps' testimony was merely speculative and could not properly be considered by the jury.
 
 
 15
 Our review of plaintiffs' assignments of error may end here. In ruling on defendants' motion for a directed verdict, the court had to consider whether or not there were controverted issues of fact upon which reasonable minds could differ. Proctor v. Colonial Refrigerated Transportation, 494 F.2d 89, 93 (4th Cir.1974). The only evidence tendered or offered by plaintiffs of the existence of design defects in the 1968 Volkswagen was the rejected testimony of DeMaria and Camps. Without this, there was insufficient evidence from which a jury could reasonably infer the existence of the asserted design defects which were essential to any recovery. Thus the district court did not err in granting a directed verdict for defendant.
 
 
 16
 AFFIRMED.